1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17

In re
JAMES MARVIN ROTH,

Debtor.

Bankr. Case No. 10-7659-MM11

Case No. 13-cv-2954 BAS (WVG)
Adversary Procedure 10-90359

**OPINION**

18
19
20
21
22

ANICE M. PLIKAYTIS,

Appellee,

v.

JAMES M. ROTH,

Appellant.

23

**OPINION**

24

**C. BASHANT, District Judge:**

25        On December 9, 2014, Appellant James Marvin Roth appealed a bankruptcy

26   court's determination that a portion of his debt owed to Appellee Anice M.

27   Plikaytis' was excepted from discharge. After reviewing the parties' briefing and

28   the bankruptcy court's judgment, this Court affirms the bankruptcy court.

1

## I.    *Procedural Background*

2
      Plikaytis successfully sued Roth in California state court in 2009. She was

3
awarded damages against Roth and other defendants. Roth filed for Chapter 11

4
bankruptcy on May 3, 2010. R. 4.

5
      Plikaytis then filed a complaint, with attached exhibits, objecting to the

6
dischargeability of the state court judgment. R. 3–18. Plikaytis alleged the

7
judgment was nondischargeable because it was based on fraud under 11 U.S.C. §

8
523(a)(2), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6) (counts 1, 2, and 3,

9
respectively). Compl. ¶ 4(a)–(c). Plikaytis prayed for the full amount of the

10
judgment, $4,126,844.86, plus interest. R. 4, 18.

11
      Her initial complaint was improperly served and failed to state a claim, so

12
the bankruptcy court dismissed it with leave to amend. R 45–50, 55.

13
      Plikaytis' amended complaint, filed March 3, 2011, set forth six claims for

14
relief. R. 74–94. After an adversary proceeding, the court found a total of

15
$2,997,000 of the debt was not dischargeable. R. 2890. Roth owed (1) a $2.8

16
million debt under 11 U.S.C. § 523(a)(2) because he made a fraudulent promise to

17
convey a 25% interest in the Roth Montezuma Partnership, LLP ("RMP"); (2) a

18
$90,000 debt under both defalcation pursuant to 11 U.S.C. § 523(a)(4) and willful

19
and malicious injury under 11 U.S.C. § 523(a)(6); (3) a $50,000 debt for the willful

20
and malicious intentional infliction of emotional distress under 11 U.S.C. §

21
523(a)(6); and (4) a $57,000 debt for his breach of fiduciary duty by defalcation

22
under 11 U.S.C. § 523(a)(4).

23
      Roth appealed the judgment. R. 2897. Roth makes eight claims. First, he

24
argues Plikaytis' fraud claim under 11 U.S.C. § 523(a)(2) should have been barred

25
by the statute of limitations because her amended complaint should not have

26
related back to the original complaint. Second, he argues Plikaytis did not prove

27

28

the material element of justifiable reliance required for her § 523(a)[1] claims. Third, he argues that the debt in question arising from his fraud should have been the out-of-pocket injury instead of the breach of contract judgment. Fourth, he again argues that the Amended Complaint does not relate back to the initial complaint. Fifth, he argues Plikaytis was required to prove the $57,000 defalcation was predicated on the same factual allegations underlying the state court judgment. Sixth, he argues his proffered evidence of the money he and his related parties paid into Talmadge East, LLC should have been considered by the bankruptcy court. Seventh, he argues the court improperly found fiduciary capacity in the claims under 11 U.S.C. § 523(a)(4). Eighth and lastly, he argues the intentional infliction of emotional distress claim should have been allocated among dischargeable and nondischargeable claims, and that such allocation evidence was Plikaytis' burden to prove.

The Court finds no merit in Roth's appeal. Therefore the Court affirms the judgment in its entirety.

## II.    *Standard of Review*

On appeal, a bankruptcy court's legal conclusions are reviewed *de novo*, factual findings are reviewed for clear error, and mixed questions of law and fact are reviewed *de novo. See Murray v. Bammer (In re Bammer),* 131 F.3d 788, 792 (9th Cir.1997).

## III.    Discussion

## A. Relation Back of Plikaytis' Amended Complaint

In his first and fourth issues on appeal, Roth challenges the relation back of Plikaytis' Amended Complaint to her initial complaint. He concedes that the original complaint was timely filed. Appellant's Opening Br., ECF 7, 8:6–8. However, he argues that because the initial complaint only (1) includes the state

---

[1] All statutory references are to Title 11 of the U.S. Code unless otherwise stated.

court Judgment, an abstract of judgment, and writ of execution, (2) recites that the Judgment "includes awards for breach of fiduciary duties and intentional infliction of emotional distress," and (3) alleges without factual support that the judgment was nondischargeable under § 523(a)(2)(A), (a)(4), and (a)(6), that it did not sufficiently allege its claims so that the Amended Complaint could relate back to it. ECF 7, 8:8–19. Accordingly, he argues the Amended Complaint was untimely, and claims under § 523(a)(2)(A), (a)(4), and (a)(6) should be barred.

Federal Rule of Civil Procedure 15(c)(1)(B) permits amendments to a complaint to relate back to the time of filing of the original complaint if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" It is designed to prevent surprising defendants with new charges they believe are no longer "alive" because the statute of limitations has run. *See Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1236 (D. Colo. 2009). Relation back is "liberally construed" so long as there is a "factual nexus[.]" *See id.* (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)). The relation back of an amended complaint is reviewed *de novo. Slayton v. American Express Co.*, 460 F.3d 215 (2nd Cir. 2006); *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hughes*, 594 F. Supp. 2d at 1236 (citing *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* (quoting *Erickson*, 551 U.S. at 89). This standard is not displaced by the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570–72. *Hughes*, 594 F. Supp. 2d at 1236.

Roth relies on *Walsh Securities Inc. v. Cristo Property*, 2008 WL 4792544

(D. N.J. October 31, 2008), *amended on another point*, 2009 WL 1883988 (D. N.J. June 30, 2009), an unpublished case inapplicable here. Unlike Plikaytis' initial complaint, the allegations of fraud in *Walsh* went unpled in the initial complaint.

Here, the court can first look to the causes of action alleged in the original and amended complaints. Roth challenges the causes of action under § 523(a)(2)(A), (a)(4), and (a)(6). All three were initially pled. It is also clear the amended causes of action arise from the same factual nexus because they are in fact the same causes of action initially pled based on identical material elements. Moreover, Roth was on notice of the underlying factual basis for the state court's judgment because he was a party in the state court litigation.

Roth relies on Plikaytis' failure to plead specific facts of fraud in her initial complaint as grounds for barring relation back. Relation back is construed liberally, and the doctrine prohibiting it is designed to protect defendants from unfair surprise. The initial complaint did actually and adequately put Roth on notice of the claims. The initial complaint included the state court judgment. While the judgment itself did not include the factual basis or causal relationships necessary to properly state a claim, it limited the scope of relevant facts to those relating to Roth's conduct underlying the state court liability. This put Roth on notice of the claims against him and had a sufficient factual nexus to the assertions in the amended pleadings. Accordingly, the bankruptcy court's decision to permit amendment and relation back of the complaint is affirmed.

**B. Waiver of "Justifiable Reliance" Under § 523(a)(2)(A)**

Roth argues Plikaytis failed to prove she justifiably relied on his promise to convey a 25% interest in RMP to her, which is a required element under § 523(a)(2)(A). ECF 7, 13:10–25.

Federal Rule of Civil Procedure 16 governs the conduct in pretrial conferences and the substance of pretrial orders in bankruptcy adversary proceedings, placing "a substantial responsibility for assisting the court in

identifying the factual issues worthy of trial." Fed. R. Civ. P. 16 advisory committee note to 1983 amendment; Fed. R. Bankr. P. 7016. At the pretrial conference, the court may take action on (among other things): "formulating and simplifying the issues, and eliminating frivolous claims or defenses ... [and] avoiding unnecessary proof and cumulative evidence...." Fed R. Civ. P. 16(c)(2).

The "purpose of a pretrial conference is to sift the discovered and discoverable facts to determine the triable issues, both factual and legal, and to chart the course of the lawsuit accordingly." *Lynch v. Call*, 261 F.2d 130, 132 (10th Cir.1958) (quoted by *MacArthur v. San Juan Cnty.*, 416 F. Supp. 2d 1098, 1112-14 (D. Utah 2005)). At the pretrial conference "the parties have an unflagging obligation to spell out squarely and distinctly those claims they desire to advance at the trial proper. Good-faith compliance with Civil Rule 16 plays an important role in this process." *Veranda Beach Club Limited Partnership v. Western Surety Co.,* 936 F.2d 1364, 1371 (1st Cir.1991) (citation omitted).

"Attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be." *MarkHon Industries, Inc.,* 781 F.2d 613, 617 (7th Cir.1986). "[C]ounsel bear a substantial responsibility in formulating the triable issues in that they must identify these issues for the court or they waive the right to have them tried." 3 James W. Moore, et al., *Moore's Federal Practice* ¶ 16.11, at 16–49 (2d ed. Rev.1994) (footnotes omitted).

Roth did not object to Plikaytis' evidence until after the evidentiary phase of the trial concluded. *Id.* at 14:7–9; R. 3024. He does not assert that he identified "justifiable reliance" as a factual issue worthy of trial, as required under Federal Rule of Civil Procedure 16. In fact, Roth concedes that he raised the issue "after all the evidence was heard." ECF 7, 10:15 (citing R. 2694–95, 3024).

According to the pretrial order, the state court found "Plikaytis relied on [Roth's oral promise to grant Plikaytis a 25% interest in RMP in lieu of retirement benefits] by continuing her employment with Roth's companies [and] not

negotiating for other retirement benefits." Pretrial Order II.A.7. Roth was on notice that if he did not believe this adequately satisfied Plikaytis' burden to prove justifiable reliance, he was required to raise it as an issue for trial.  He did not challenge that this did not sufficiently prove justifiable reliance until after evidence closed. Accordingly, this issue is waived at trial and on appeal.

## C. Evidence Supporting "Justifiable Reliance"

Even if Roth did not waive his challenge, the bankruptcy court's finding that Plikaytis justifiably relied on Roth's promise was not clearly erroneous.

Fraud under § 523(a)(2)(A) requires justifiable, but not reasonable, reliance. *Field v. Mans*, 516 U.S. 59, 74–75 (1995).  "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995) (quoting Restatement (Second) of Torts § 545A (1977)) (internal quotations omitted). "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed.R.Civ.P. 52.

The bankruptcy court found Plikaytis justifiably relied on Roth's promise by "continuing to go to work there" and foregoing retirement benefits. R. 3028:22–29:4. The close and long-term relationship between Roth and Plikaytis, clearly established in the state court proceeding and undisputed in the bankruptcy proceeding, itself justifies Plikaytis' reliance on Roth's promise. In sum, even if the issue was not waived, Roth's argument has no merit. The bankruptcy's finding of justifiable reliance is based on substantial evidence and evinces no clear error.

Accordingly, Roth's liability for fraud under § 523(a)(2)(A) is affirmed.

## D. Measuring Damages Under § 523(a)(2)(A)

Roth argues the measure of damages under § 523(a)(2)(A) for fraudulently

entering into a contract with Plikaytis should be based on her out-of-pocket damages, not on the breach of contract debt. ECF 7, 16:22–17:3

A "fundamental polic[y] of bankruptcy law is to give a fresh start only to the 'honest but unfortunate debtor.'" Accordingly, simple breaches of contract are dischargeable. *See In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992). However, if a debt for an intentional breach of contract is "accompanied by" a tort, it is excepted from discharge. *Id* (refusing to discharge a debt for a breach of contract accompanied by willful and tortious conduct). This applies equally to breaches of contract accompanied by fraud under the other subdivisions of § 523. *See Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 868 (9th Cir. 2001). The fraud makes nondischargeable a preexisting obligation, it does not itself create a new obligation. *In re Jercich*, 238 F.3d 1202, 1205 (9th Cir. 2001). As such, the original breach of contract claim is the correct measure of the amount of the debt excepted from discharge. *See Banks*, 263 F.3d at 868.

The bankruptcy court found Plikaytis proved Roth committed fraud by a preponderance of evidence. The alleged fraud accompanied Roth's breach of contract, as Roth entered the contract fraudulently. Therefore the state court judgment is the correct damage measure because it is the debt resulting from the fraud. The bankruptcy court correctly found the breach of contract damages were precluded from discharge based on Roth's accompanying fraud. Accordingly, the bankruptcy court's ruling that the $2.8 million debt is nondischargeable is affirmed.

**E. Roth's § 523(a)(4) Debt**

Roth challenges the bankruptcy court's finding that Plikaytis' state court judgment of $57,000 was not dischargeable under § 523(a)(4). ECF 7, 22:19–24. He argues that because the bankruptcy court cannot definitively point to the jury's basis for its judgment, the bankruptcy court's finding was in error. Roth's position is that "Plikaytis was not entitled to try any and all possible defalcation claims on

– 8 –

her pleadings[.]" *Id.* at 24:6–8.

Roth further argues Plikaytis failed to show "fiduciary capacity" within the meaning of § 523(a)(4), and that any exceptions from discharge based on that section should be reversed. ECF 7, 28:1–4. He argues an LLC does not create an express trust (*see* ECF 7, 28:8–16) and the court "incorrectly conflated state law fiduciary duties with 'fiduciary capacity'" (*id.* at 28:1–2).

Section 523(a)(4) makes a debt nondischargeable where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity[.]" Fiduciary capacity is defined based on federal law, which requires the debtor "must have been a 'trustee' before the wrong and without reference to it." *Ragsdale v. Haller*, 780 F.2d 794, 796 (1986) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934)). However, the existence of an express "trust" is defined based on state law. *See id. Ragsdale* clarified that under California law, partners have fiduciary capacity. *Id.* at 795–97. In 2009, the then-operative California law stated, "The fiduciary duties a manager owes to the limited liability company and to its members are those of a partner to a partnership and to the partners of the partnership." Cal. Corp. Code § 17153 (repealed January 1, 2014). Therefore under California law, managers of a limited liability company are fiduciaries for purposes of § 523(a)(4).[2] *See In re Flores*, 11-33156 HLB, 2013 WL 6038978 (Bankr. N.D. Cal. Nov. 13, 2013); *In re Hanson*, 09-13200-B-7, 2010 WL 9477473 (Bankr. E.D. Cal. June 25, 2010).

Roth managed Talmadge East, LLC, and Plikaytis was a member. R.

---

[2] California Corporations Code § 17704.09 superseded § 17153 after the state court judgment was imposed. It more expressly defines the fiduciary duties members owe to a limited liability company and therefore may limit the fiduciary capacity of an LLC.

2471:3–19. Thus an express trust existed, satisfying the first prong. As manager of the LLC, Roth had fiduciary capacity, satisfying the third prong. The Court then turns to whether the debt was caused by fraud or defalcation: prong three.

Defalcation incorporates both an act of defalcation and wrongful intent.[3] *In re Moore*, 12-10802-A-7, 2014 WL 3570600 (Bankr. E.D. Cal. July 18, 2014). *Creditors* satisfy their burden to prove a defalcation by establishing that their debtor is "a fiduciary to whom funds had been entrusted." *In re Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997) *abrogated on other grounds*, *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). Thereafter, the burden shifts to the fiduciary to "account fully for all funds received [for the creditor's benefit] by persuading the trier of fact that [the fiduciary] complied with [the] fiduciary duties with respect to all questioned transactions." *Id.* Under the "[b]asic principles of the law of fiduciaries[,] the burden to render an accounting [is] on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for." *Id.* Imposing such a burden is consistent with incentivizing the fiduciaries to perform their duties "faithfully and with care." *Id.* "Every presumption of fact" is against the fiduciary. *In re Niles*, 106 F.3d at 1462 (quoting *Landis v. Scott*, 32 Pa. (8 Casey) 495 (Pa. 1859)).

On appeal, Roth claims he was unable to meet his burden because Plikaytis

---

[3] Wrongful intent requires the debtor to be culpable and involves "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S.Ct. at 1757. Roth does not challenge wrongful intent on appeal, and the bankruptcy court found wrongful intent. R. 3034:11–13 ("Mr. Roth had the intention of injuring Ms. Plikaytis and at least knowledge that he knew his actions, as a sophisticated real estate investor, were going to injure her.") This satisfied Plikaytis' only burden, as an act of defalcation was necessarily decided in the state court proceeding. *See In re Maxwell*, 509 B.R. 286, 290–92 (Bankr. E.D. Cal. 2014). Because the bankruptcy court found the necessary wrongful intent at trial, the state court found an act of defalcation, and a manager of an LLC has "fiduciary capacity," all elements of a § 523(a)(4) claim were satisfied. See R. 3032:17–34:19. The act of defalcation was found in the state court, and therefore it was not time-barred. This is an independent basis for affirming the resulting finding of nondischargeability.

did not respond to his discovery requests. ECF 7, 24:13–18. He also complains that the bankruptcy court found his expenditure of attorneys' fees to combat Plikaytis' suit a defalcation without citing legal precedent. *Id.* at 25:7–12. However, "evidence of what funds were received by the fiduciary and how they were applied is likely to be more accessible to the fiduciary than to the principal." *In re Niles*, 106 F.3d at 1462. There is thus no prejudice because Plikaytis declined to respond to his requests. Further, it was Roth's duty to show that the expenditure of attorneys' fees was undertaken "with the utmost good faith toward the principal...." *Batson v. Strehlow,* 68 Cal.2d 662, 68 Cal.Rptr. 589, 598, 441 P.2d 101, 110 (1968) (cited by *In re Niles*, 106 F.3d at 1461 as "consistent with common law generally"). Roth failed to do so.

The state court jury found Roth breached his fiduciary duty "in the management and/or conducting of the business of Talmadge East, LLC" and awarded $57,000 in damages. Jury Verdict, R. 142. The bankruptcy court found a wrongful defalcation based on Roth's mismanagement of Talmadge East, LLC during 2009, which falls within the scope of the pleadings, thus finding the $57,000 nondischargeable. R. 3036:21–38:1. Any evidence outside the state court trial was excluded, except as it related to wrongful intent. R. 2287–88, 2318–20.

It was Roth's duty to present rebuttal evidence showing the defalcations were outside the scope of the pleadings. Roth cites no legal precedent supporting his belief that it was "Plikaytis' burden to show that what she presented at the bankruptcy trial was within the scope [of the pleadings]." Appellant's Reply Br., ECF 36, 13:17–18.

Accordingly, the bankruptcy court's exception from discharge of the $57,000 debt under § 523(a)(4) is affirmed.

## F.  The Weight of Roth's Proffered Evidence

Roth argues the bankruptcy court should have given more weight to his proffered evidence that Roth and his related parties loaned money to Talmadge

East, LLC in 2008–2009. ECF 7, 26:13–19. The bankruptcy court disregarded the evidence because it was presented by Roth and "wasn't clear enough" to properly calculate. R. 3046–47; ECF 7, 26:17–19. The bankruptcy court found Plikaytis more credible than Roth. R. 3026.

"Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed.R.Civ.P. 52. Credibility determinations receive heightened deference because of "the fact finder's unique opportunity to observe the demeanor of the witnesses." *Valenzuela v. Michel*, 736 F.3d 1173, 1176-77 (9th Cir. 2013) (quoting *Newton v. National Broadcasting Co., Inc.,* 930 F.2d 662, 671 (9th Cir.1990)). "A finding of clear error requires a 'definite and firm conviction that a mistake has been committed.'" *Valenzuela v. Michel,* 736 F.3d at 1176–77. (quoting *Gonzalez–Caballero v. Mena,* 251 F.3d 789, 792 (9th Cir.2001)).

Here, the bankruptcy court could disregard any evidence presented by Roth if it found Roth incredible. In fact, the court made a credibility statement on the record, finding "Ms. Plikaytis was more credible." The court could disregard evidence presented by Roth it deemed untrustworthy. There is no evidence of abuse of discretion or clear error. Accordingly, the bankruptcy court's decision to disregard Roth's proffered evidence of other payments to Talmadge East, LLC is affirmed.

**G. Intentional Infliction of Emotional Distress**

Roth argues that the state court judgment for intentional infliction of emotional distress should have been allocated among the dischargeable and nondischargeable debts. ECF 7, 29:5–18.

"To establish a claim for intentional infliction of emotional distress, a plaintiff must prove '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional

distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster,* 32 Cal.3d 197, 209 (1982)) (internal quotation marks and citations omitted). To except a debt from discharge under § 523(a)(6), the debt must be incurred based on willful and malicious injuries. Both willfulness and maliciousness must be supported by substantial evidence. *See In re Barboza*, 545 F.3d 702, 711–12 (9th Cir. 2008). Bankruptcy courts have found based exclusively on issue preclusion that a debt incurred from intention infliction of emotional distress is not dischargeable. *See In re Elder*, 262 B.R. 799, 807 (C.D. Cal. 2001) *aff'd*, 40 F. App'x 576 (9th Cir. 2002); *In re Davis*, 486 B.R. 182, 190 (Bankr. N.D. Cal. 2013) *decision supplemented*, 10-74245 MEH, 2013 WL 2304684 (Bankr. N.D. Cal. May 24, 2013).

Intentional infliction of emotional distress is an independent cause of action and does not rely on an allocation of damages between dischargeable and nondischargeable debts. The jury found Roth liable for intentional infliction of emotional distress, and the bankruptcy court found "[i]t was supported by an intent to inflict emotional distress of the proper, non-dischargeable nature required to find a claim under 523(a)(6)." R. 3038:7–10. Roth does not challenge evidence did not support these findings. Accordingly, the nondischargeability of the debt for intentional infliction of emotional distress is affirmed.

## CONCLUSION

After reviewing the bankruptcy court's legal conclusions *de novo* and its factual findings for clear errors, the Court **AFFIRMS** the bankruptcy court.  This Opinion terminates the instant action.  The Clerk shall close the file and terminate all pending matters.

**AFFIRMED.**

1

2    **DATED: September 5, 2014**

3                                                        Hon. Cynthia Bashant
                                                         United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28